**Antonio GONZALES, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 04–88–00404–CR.**

Court of Appeals of Texas, San Antonio.

Jan. 17, 1990.

Rehearing Denied Feb. 27, 1990.

Larry Zinn, San Antonio, for appellant.

Fred G. Rodriguez, Mary Roman, Diane Cruz, Barbara Hervey, Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CHAPA and ONION, JJ.

## OPINION

ONION, Justice.*

This is an appeal from a conviction for murder. TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1989). Following the jury's verdict of guilty the court assessed the appellant's punishment at confinement in the Department of Corrections for ninety-nine (99) years.

The appellant was charged with the murder of a five year old child by striking her by manner and means to the grand jury unknown resulting in severe blunt trauma to her head and causing her death on or

* Appointed to this case by the Chief Justice of the Supreme Court of Texas.

about August 29, 1987. The appellant lived with the victim's mother, the victim and several other children in a room at the Matador Motel in San Antonio, where the alleged offense occurred. Ten year old Yolanda M____, the victim's sister, was apparently the only eye-witness.

On appeal the sufficiency of the evidence to sustain the conviction is not challenged. In a sole point of error the appellant contends the trial court erred in permitting a child witness to the alleged murder to testify by means of a closed circuit television system pursuant to TEX.CODE CRIM. PROC.ANN. art. 38.071 (Vernon Supp. 1989). He contends that the said statute was not applicable to the instant case, and that the complained of testimony was permitted in contravention of his rights to confrontation and due process under both the federal and state constitutions. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, §§ 10, 19; *see also* TEX. CODE CRIM.PROC.ANN. arts. 1.04, 1.05, 1.25 (Vernon 1977). Appellant notes his timely objections on these grounds and his trial reliance upon *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

On June 28, 1988, the first day that testimony was taken in the trial on the merits, the State filed a motion to use closed circuit television equipment pursuant to article 38.071, sections 3 and 4, in connection with the testimony of Yolanda M____. A hearing on said motion was held that day. No evidence was heard. Only the arguments of counsel were advanced. The State asserted in argument that Yolanda was afraid of the appellant, intimidated by him, found it difficult to talk about the incident, and could not testify with any man in the room. The State proposed that a two way closed circuit television system be set up whereby Yolanda could testify from a room in the district attorney's office accompanied by a "child advocate" employee of that office. Everyone else would be in the courtroom and be able to view Yolanda on a television screen.[1]

1. The State acknowledged that it had not permitted any contact between Yolanda and the

Appellant pointed out that article 38.071 was expressly limited to certain offenses, not including murder, and that the statute was applicable only to a victim of one of the enumerated offenses and not just a witness; and that further the proposed procedure did not comport with that set forth in the statute. At first the trial court agreed that the statute related only to a victim or complainant, but the State argued that Yolanda was the complaining witness in another case, a sexual assault case against the appellant, and therefore she qualified as a victim in the instant murder case. The trial court agreed and granted the State's motion based on said article 38.071.

On June 29, 1988, the very next day, the United States Supreme Court handed down its decision in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), holding that the federal constitutional confrontation clause required face to face confrontation, and that an Iowa statute which allowed the placement of a screen between child witnesses, victims of the offense charged, and the defendant during testimony violated the defendant's right of confrontation.

On June 30, 1988, as a result of said decision the State filed a second motion to use closed circuit television under article 38.071, sections 3 and 4. Another hearing before the court was conducted on this motion. This time evidence was offered.

Irma Alvarez, a non-lawyer "child advocate" employee of the district attorney, testified that her role was to provide support for child witnesses and "to prepare them for court." She related that she and the women prosecuting attorneys had seen Yolanda on a weekly basis for two months, each visit lasting from one to two hours, and that during the last week she had spent four to six hours with Yolanda; that while Yolanda had been undergoing counseling (first by a male and later a female counselor) that she (Alvarez) did no counseling. Alvarez expressed the opinion that

testifying in court would damage Yolanda's emotional stability, that Yolanda was afraid of the appellant and was intimidated by him and by men generally. Jamie Ramos, Yolanda's grandmother with whom she lived, testified that Yolanda was emotional, was afraid of the appellant, and that she did not believe Yolanda would be able to testify in the presence of the appellant. It was shown that there had been no contact between the appellant and Yolanda since the alleged offense, almost ten months before. The counselor was not called to testify nor was any medical or psychiatric evidence offered as to trauma or the severity thereof.

At the close of the hearing the appellant renewed his objections. They were overruled and the second motion based on article 38.071 was granted.

Yolanda testified via a two way closed circuit television system and was cross-examined. Yolanda was in a conference room in the district attorney's office accompanied by the "child advocate" employee. The judge, jury, attorneys, court reporter, operator of the television equipment, and the audience were all in the courtroom. The judge, jury and attorneys could see Yolanda and the "child advocate" employee on a twenty-five inch monitor. The tape, from their viewpoint, is in the record. After Yolanda's testimony, Alvarez, the "child advocate," testified for the purpose of the record only that from a thirteen inch monitor she and Yolanda could see the appellant and the attorney interrogating Yolanda at the time. The prosecutor and defense counsel had to switch seats when interrogating in order to be seen. Alvarez revealed that the jury could not be seen, and the judge only appeared on the screen for the brief time it took to administer the witness oath to Yolanda.

No matter what may be said about the procedure utilized it is clear that appellant was not accorded his face to face confrontational right. The question remains

---

defense counsel, noting that one of appellant's counsel had a beard which might frighten her and agreed that it had nixed the suggestion of

defense counsel as to the possibility of a deposition.

whether an exception to the constitutional right can be recognized in the instant case.

It is well established that the Confrontation Clause of the Sixth Amendment, United States Constitution, is applicable to the States by virtue of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1067–69, 13 L.Ed.2d 923 (1965); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *see also* TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. arts. 1.05, 1.25 (Vernon 1977).

In *Coy v. Iowa, supra,* the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment provides a criminal defendant the right to "confront" face to face the witnesses giving evidence against him at trial; that such *core* guarantee serves the general perception that confrontation is essential to fairness, and helps to ensure the integrity of the fact finding process by making it more difficult for witnesses to lie.

The Court, speaking through Justice Scalia, stated:

> The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Id.* at 1020, 108 S.Ct. at 2802, 101 L.Ed.2d at 866.

The Court held that the placement of a screen, authorized by the Iowa statute, between the defendant and the child sexual assault victims during their testimony at trial violated the Confrontation Clause of the Sixth Amendment.

The Court left, for another day, the question whether any exceptions exist to the core right of confrontation. "Whatever they may be, they would surely be allowed only when necessary to further an important public policy." *Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. The Court objected to the State's assertion that necessity for an exception was established by the Iowa statute, which creates a legislatively imposed presumption of trauma for

> something more than the type of generalized finding underlying such a statute is needed when the exception is not "firmly ... rooted in our jurisprudence." (Citation omitted.) The exception created by the Iowa statute, which was passed in 1985, could hardly be viewed as firmly rooted. Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception.

*Id.* at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867.

Justice O'Connor, joined by Justice White, concurred in a separate opinion. She agreed that the Confrontation Clause was violated in the *Coy* case, but noted her view that the rights involved were not absolute and may give way if the procedure was necessary to further an important public policy (a compelling State interest), and the trial court makes a case-specific finding of necessity. In her discussion, Justice O'Connor observed the number of child abuse statutes enacted by various states to protect child abuse victims. *Id.* at 1022–23, 108 S.Ct. at 2804–05, 101 L.Ed.2d at 868–70 (dissenting opinion).

The Court's literal approach to the Confrontation Clause signals a renewed desire to ensure that a criminal trial remains an adversary proceeding. *Coy* has undoubtedly heightened scrutiny of the circumstances that will support restrictions on the defendant's face to face confrontation which ensures a physical confrontation, a visible encounter with the accuser who appears at trial and gives testimony. From *Coy* we know that the type of generalized legislative finding of necessity presented there is not enough by itself. The decision, however, left the lower courts without much guidance as to whether and under what

circumstances to permit an exception to face to face confrontation.

We do not find that *Coy* differs that much from earlier decisions reached under TEX. CONST. art. I, § 10. In *Kemper v. State,* 138 S.W. 1025, 1039 (Tex.Crim.App.), *overruled by Robertson v. State,* 142 S.W. 533, 546 (Tex.Crim.App.1911), the court wrote:

> [T]he accused person, whoever he may be, and with whatever offense he may be charged, shall be "confronted" with the witnesses against him. How is he to be "confronted"? Surely by having them come face to face.

*See also Garcia v. State,* 151 Tex.Crim. 593, 210 S.W.2d 574, 578 (1948); *Phelps v. State,* 158 Tex.Crim. 510, 257 S.W.2d 302, 303 (1953).

■ In the instant case we are dealing with a witness, a child witness, in a murder case. There is no statute declaring a public policy regarding the situation, nor any legislative finding of necessity. The State, however, relies exclusively upon TEX. CODE CRIM.PROC.ANN. art. 38.071 to carve out an exception to the right of confrontation under the circumstances presented.

In 1983 the Legislature enacted a five section statute, TEX.CODE CRIM.PROC. ANN. art. 38.071 (Testimony of child who is victim of offense) Act of June 19, 1983, ch. 599, § 1, 1983 Tex.Gen.Laws 3828, 3828–35. Section 1 of said statute reads:

> Section 1. This Article applies *only* to a proceeding in the prosecution of an offense, including but not limited to an offense under Chapter 21, Penal Code [Sexual Offenses], as amended, or Section 43.25, Penal Code, as amended, alleged to have been committed against a child 12 years of age or younger, and *applies only to the statements or testimony of that child.*

(Emphasis supplied.)

Other sections of the statute deal with procedures in which the statement or testimony of the child may be taken, without the presence of the defendant, and presented in court at trial.

It is here observed that section 2 of this 1983 addition to the Code of Criminal Procedure was held unconstitutional in *Long v. State,* 742 S.W.2d 302 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988).

The original Section 3 of the 1983 version of the statute was held constitutional in *Hightower v. State,* 736 S.W.2d 949 (Tex. App.—Eastland 1987, pet. granted). Such decision was reached prior to *Coy v. Iowa, supra.*

Sections 4 and 5 were held unconstitutional in *Powell v. State,* 765 S.W.2d 435 (Tex.Crim.App.1989).

Section 3 was amended for the first time in 1987 (Act of June 19, 1987, ch. 998, § 1, 1987 Tex.Gen.Laws 3378.) This particular amendment, procedural in nature, made some changes in the original version of section 3.[2]

Later in 1987, at the Second Called Session of the Legislature, the five sections of

---

2. Article 38.071, § 3, as thus amended, read (with changes of this first 1987 amendment shown in italics):

Sec. 3 The court may, on the motion of the attorney for any party, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court, *the court reporter,* and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. *Any* [The] persons *necessary to operate* [operating] the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in person, but *the court* shall ensure that the child cannot hear or see the defendant. *The court shall permit the attorney for the defendant adequate opportunity to confer with the defendant during cross-examination of the child. On the application of the attorney for the defendant, the court may recess the proceeding before or during cross-examination of the child for a reasonable time to allow the attorney for the defendant to confer with the defendant.*

article 38.071 were amended and revised[3] and five new sections were added to the statute (Act of Aug. 4, 1987, ch. 55, § 1, 1987 Tex.Gen.Laws, 2nd Called Sess. 180). Section 6 of the bill enacting this revision specifically provides that the revision applies only to offenses committed after the bill's effective date (October 20, 1987). The instant offense was shown to have occurred on August 29, 1987.

If article 38.071 applies to the instant case, as the State argues, then it is the original 1983 version along with section 3 as amended in 1987 by the Regular Session of the 70th Legislature. The State seems to miss this point by its reliance in its brief and in oral argument on the current version of article 38.071 as enacted by the Second Called Session of the 70th Legislature. Neither version, however, is applicable to murder cases nor to any witness except the child against whom the offense was committed. So on both scores the statute is inapplicable to the instant offense, and cannot operate as an exception to the constitutional core right of confrontation in the instant case. The fact that the statutory procedure in section 3 was not exactly followed is thus immaterial.

The State argues that the fact that murder is not one of the offenses covered by article 38.071(1) is beside the point as "[t]here is nothing which prevents law enforcement from presenting testimony of a witness in a fashion similar to the procedure outlined by Article 38.071(3)." In oral argument the State referred to this as "prosecutorial innovation," and further argues that Yolanda was a "victim" because of the facts of the instant case and because

she was the complaining witness in a separate but pending case of sexual assault against the appellant. The State concludes that the statute is thus applicable. The very terms of the statute are contrary to the State's position.

■ It is true that in a supplemental transcript there is found "Findings of Facts and Conclusions of Law," which instrument is undated and bears no file marks, although recorded in the minutes of the district court. The "findings of facts" are mere recitations of facts, listing appellant's objections and the State's arguments. They do not involve the resolution of any factual dispute. The "conclusions of law" are broad and general. The first states that the closed circuit system was necessary to further "the essential state interest in the protection of *this* child witness" (emphasis supplied). The "interest" is not otherwise identified. No statute is cited and no evidence is referred to as establishing such public policy. The second conclusion is more of a finding of fact referring to "severe trauma" necessitating the use of television. The third conclusion merely states that the *Coy* requirements were met.

The State advances one theory and one theory only. Adhering to article 38.071 with the claimed gloss of the trial court's "findings," the State argues that an exception to the constitutional right to face to face confrontation (both federal and state) has been carved out in accordance with *Coy*.

We do not agree. The statute is inapplicable to the situation presented and the "findings" are inadequate. A defendant's core right of face to face confrontation with witnesses against him who appear at

---

**3.** Section 1 of this enactment provided much the same limitations as the original Section 1. It provides:

Sec. 1. This article applies only to a proceeding in the prosecution of an offense *defined by any of the following sections of the Penal Code if the offense is* [including but not limited to an offense under Chapter 21, Penal Code, amended, or Section 43.25, Penal Code, as amended] alleged to have been committed against a child 12 years of age or younger *and if the trial court finds that the child is unavailable to testify at the trial of the offense,* and applies only to the statements or testimony of that child.

*(1) Section 21.11 (Indecency with a Child);*

*(2) Section 22.011 (Sexual Assault);*

*(3) Section 22.02 (Aggravated Assault);*

*(4) Section 22.021 (Aggravated Sexual Assault);*

*(5) Section 22.04(b) (Injury to a Child or an Elderly Individual);*

*(6) Section 22.0(c) (Injury to a Child or an Elderly Individual) if the conduct is committed intentionally or knowingly;*

*(7) Section 25.02 (Incest);*

*(8) Section 25.06 (Solicitation of a Child), if the offense is a felony or the third degree; or*

*(9) Section 43.25 (Sexual Performance by a Child).*

trial to testify cannot be so easily diluted. *Coy v. Iowa, supra.* The trial court erred in granting the State's motions.

 Where a defendant's right to confront witnesses against him is denied at trial, an appellate court will not automatically reverse the conviction but will conduct a harmless error analysis. *Mallory v. State,* 752 S.W.2d 566, 569 (Tex.Crim.App. 1988); *see also Ex parte Truong,* 770 S.W.2d 810, 813 (Tex.Crim.App.1989). The harmless error test for federal constitutional error is that set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Maynard v. State,* 685 S.W.2d 60, 67 (Tex.Crim.App.1985). And it has been pointed out that TEX.R.APP.P. 81(b)(2) is the codified progeny of *Chapman v. California, supra. Bennett v. State,* 766 S.W.2d 227, 229 n. 7 (Tex.Crim. App.), *cert. denied,* — U.S. ——, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). Texas courts now determine harmless error under said Rule 81(b)(2). *Powell v. State,* 765 S.W.2d 435, 437 (Tex.Crim.App.1989). Thus if there is error the court must reverse unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

 In the instant case Yolanda M——— was the only eye witness to the murder. Her testimony was essential to the conviction. Her mother was not an eyewitness, was an accomplice witness as a matter of law, and had given three prior statements, none of which she testified were true. The State's jury argument was that if the jury did not believe the mother, they should consider the testimony of Yolanda.

We are unable to declare beyond a reasonable doubt that the error in admitting the televised testimony was harmless.

We sustain appellant's point of error without the necessity of reaching appellant's due process claim.

The judgment is reversed and the cause remanded.